IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

DALE FOSSEN, et al.,                                     CV 09-61-H-CCL

     Plaintiffs,

-v-                                                                  OPINION & ORDER

BLUE CROSS BLUE SHIELD
OF MONTANA, INC.,

     Defendant.

*******

Before the Court is Defendant's Motion for Summary Judgment (Doc. 11),

which is opposed by Plaintiff.  The matter came on regularly for hearing on

September 30, 2010.  Plaintiffs are Dale Fossen, D and M Fossen, Inc., Larry

Fossen, L and C Fossen, Inc., Marlowe Fossen, M and C Fossen, Inc., and Fossen

Brothers Farms, a Partnership (collectively, "FBF").  Defendant is Blue Cross

Blue Shield of Montana, Inc. ("BCBSMT").  Plaintiffs are represented by

Lawrence A. Anderson, and Defendant BCBSMT is represented by Michael F. McMahon and Bernard Hubley.

Plaintiffs' Complaint alleges that Defendant BCBSMT violated Mont. Code Ann. § 33-22-526(2)(a), which prohibits an insurance company from charging an individual a higher premium for group health insurance based on that individual's health status.

Defendant BCBSMT removed Plaintiffs' Complaint from state court based on its assertion that each Plaintiff is either a participant or a beneficiary of an employee welfare benefit plan ("Fossen Brothers Farms Plan" or "FBF Plan") insured by Defendant BCBSMT.  Defendant asserts that the FBF Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Citing the "extraordinary pre-emptive power" of ERISA's civil enforcement provision, Defendant removed to federal court because ERISA "'completely preempts a state-law claim" when the individual could have brought the claim under ERISA § 502(a).  (Def.'s Removal Notice, Doc. 1 at 6-7, *citing Aetna Health Inc. v. Davila*,

2

542 U.S. 200, 210 (2004); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987).)

ERISA is indeed one of the few federal statutes that "wholly displaces the state-law cause of action through complete pre-emption...." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Section 1144(a) provides that "this title . . . shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). ERISA thus contains "one of the broadest preemption clauses ever enacted by Congress." *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 130-31 (9th Cir. 1993) (internal citations omitted). "ERISA preempts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan.'" *Winterrowd v. American General Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) (*quoting* 29 U.S.C. § 1144(a)). Such preemption supports removal of state-law causes of action to federal court. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosures

on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257-58 (1986).  Material facts are those that may affect the outcome of the case.  *See id.* at 248.  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and–by its own affidavits or discovery–set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

4

If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

**FACTS**

In December, 2003, the three Fossen Brothers, Dale, Larry, and Marlowe, acting as Fossen Brothers Farms, decided to purchase health insurance from BCBSMT. Plaintiffs reviewed various health insurance options with the assistance of their insurance agent, Roger Olson, who is an authorized BCBSMT agent, selling BCBSMT products in Montana since 1995. Ultimately, Plaintiffs decided to apply for group health insurance offered by Associated Merchandisers Inc. ("AMI"), called the Association Group Benefit Plan ("AMI Arrangement"). The AMI Arrangement consists of a moderately-sized group of unrelated

employers that purchases group health insurance from BCBSMT.[1]  Each employer within the AMI Arrangement is rated separately by BCBSMT, which then charges a uniform premium per employee within each specific employer-group.  Plaintiffs originally considered the possibility of purchasing individual health insurance directly from BCBSMT, but eventually decided to purchase their group health insurance (which was still a BCBSMT policy) through the AMI Arrangement. This health insurance policy was a contract for one year of coverage, renewable annually.  The first insurance contract was entered into in January of 2004, and Plaintiffs renewed their BCBSMT insurance with subsequent annual policies in 2005, 2006, 2007, 2008, and 2009.

All went well for a couple of years until early 2006, when Plaintiffs received a notification that their premiums were to be increased by 21%, allegedly due, at least in part, to the health status of one of the FBF employees or their

---

[1]  In 2008, a new association, Montana Chamber Choices Trust ("MCCT"), merged with AMI.  (Doc. 12-1, ¶ 2.)  In 2009, Plaintiffs purchased their BCBSMT group health insurance product through MCCT (the "MCCT Arrangement").

dependents.  The Plaintiffs and their insurance agent, Roger Olson, objected to such an increase in premium, because it was their understanding that the insurance risk was spread over the entire association of employers, such that no single employer would experience an increase in premiums not experienced by all other employers in the association.   On April 6, 2006, Plaintiff Dale Fossen filed a complaint against BCBSMT with the Department of Insurance of the Montana State Auditor.  At the request of the Department of Insurance, Roger Olson wrote to the Department of Insurance on April 21, 2006, and he also complained about the 21% increase in premiums applicable to Fossen Brothers Farms.  Both Dale Fossen and Roger Olson believed that the premiums of all the employers participating in the AMI Arrangement would go up (or down) together, but in fact the premiums went up or down according to a formula used by BCBSMT that took into account both the age and the health status of employees and their dependents within any employer's group plan.

In response to the investigation of the Department of Insurance, BCBSMT explained by letter dated May 24, 2006, the manner in which it set premiums for

7

each employer group purchasing its health insurance from the AMI Arrangement.

BCBSMT pointed out that of the 600 employers participating in the AMI

Arrangement and purchasing their BCBSMT insurance through 40 different

insurance agents, the Fossen Brothers Farm's complaint was the only complaint of

its type received by BCBSMT.  In order to make things right with Fossen Brothers

Farms, BCBSMT offered to forego the unexpected increase in premium, effective

for the plan year June 1, 2006, through May 31, 2007.  This was clearly stated on

May 24, 2006, in a letter from BCBSMT legal counsel Mary Belcher to John

Holbrook, of the Montana Department of Insurance:

> BCBSMT will make an exception to the underwriting
> process described above and shall not make any table
> adjustment to the Fossen Group's premium for the plan
> year, June 1, 2006, through May 31, 2007.  This means
> that the Fossen Group would receive an increase of 4.9
> percent, the same base increase applicable to all AMI
> groups, subject to any applicable age band increase as
> explained below. . . .  Please note, however, that this
> exception is made on a one-time basis for the Fossen
> Group for the specific plan year, June 1, 2006, through
> May 31, 2007.  Should Mr. Fossen elect to renew his
> group with BCBSMT for any succeeding plan year, the
> group will be subject to the same underwriting process

8

applicable to all groups participating in the AMI
Association and as described above in detail.

(Doc. 24-1, Ex. A at 2-3.)

When the new plan year arrived in 2007, however, Plaintiffs were again

dissatisfied that they were being expected to pay an increased premium based on

health status factors of participants within their employer group, and this litigation

ensued.

**DISCUSSION**

Plaintiffs' Amended Complaint relies upon various state law claims,

including allegations of violation of Montana statute, unfair trade practices, and

breach of contract.  It is the alleged violation of Mont. Code Ann. § 33-22-526(2),

however, that underpins most of Plaintiffs' Amended Complaint, because it gives

rise to the other state law claims.  That Code provision provides that:

> "(2) (a) A group health plan and a health insurance issuer
> offering health insurance coverage in connection with a
> group health plan may not require an individual, as a
> condition of enrollment or continued enrollment under
> the group health plan, to pay a premium or contribution
> that is greater than the premium or contribution for a

9

similarly situated individual enrolled in the group health
plan on the basis of any health status-related factor of the
individual or of an individual enrolled under the plan as
a dependent of the individual.

(b) This subsection (2) does not:
(I) restrict the amount that an employer may be charged
for coverage under a group health plan; or
(ii) prevent a group health plan and a health insurance
issuer offering group health insurance coverage from
establishing premium discounts or modifying otherwise
applicable copayments or deductibles in return for
adherence to programs of health promotion and disease
prevention.

Mont. Code Ann. § 33-22-526(2).

More to the point for our purposes, ERISA itself contains an identical

statutory provision:

(b)(1)  In general.  A group health plan, and a health
insurance issuer offering health insurance coverage in
connection with a group health plan, may not require any
individual (as a condition of enrollment or continued
enrollment under the plan) to pay a premium or
contribution which is great than such premium or
contribution for a similarly situated individual enrolled
in the plan on the basis of any health status-related factor
in relation to the individual or to an individual enrolled
under the plan as a dependent of the individual.

10

(2) Construction.  Nothing in paragraph (1) shall be construed–

(A) to restrict the amount that an employer may be charged for coverage under a group health plan; or

(B) to prevent a group health plan, and a health insurance issuer offering group health insurance coverage, from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention.

29 U.S.C. § 1182(b).

Moreover, not only does ERISA contain the same provision as M.C.A. § 33-22-526(2), ERISA also provides for civil enforcement of this provision, because a participant or beneficiary can seek equitable relief for any violation of ERISA pursuant to section 502(a)(3): "[a] civil action may be brought . . . by a participant, [or] beneficiary . . . [in an ERISA plan] (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.  29 U.S.C. § 1132(a)(3).  Thus, Plaintiffs' claim, even when founded upon M.C.A. § 33-22-526(2), falls within the

11

scope of ERISA.   "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health v. Davila*, 542 U.S. 200, 209 (2004).

The important question is whether BCBSMT has violated § 1182(b) of the United States Code in the manner in which it has calculated premiums for the Plaintiffs' FBF Plan.  Here, BCBSMT points out that, pursuant to §1182(b)(2)(A), it is unlimited in its ability to charge varying premiums to *employers* based on health factors, just that it cannot single out an *individual* employee with a higher premium based on health factors.  Plaintiffs attempt to argue that the *group* is the 600 employers participating in the AMI/MCCT Arrangement, and Fossen Brothers Farms is an *individual* participant in the AMI/MCCT Arrangement that has been singled out for a higher premium based on health factors.  BCBSMT points to the AMI election form, wherein "Dale Fossen" is listed above the line titled "Printed Name of Owner or Officer of the *Group*."  Similarly, when the MCCT Arrangement became the device used to market BCBSMT health insurance, the

12

MCCT election form listed Mr. Fossen as the name of the "*Group* Leader."

BCBSMT contends that the only group that Dale Fossen could have been leading

was the Fossen Brothers Farms group–he was not and could not have been the

leader of the AMI or the MCCT.

It does appear to the Court that Fossen Brothers Farms was the employer

within the meaning of ERISA.  29 U.S.C. § 1002(1).   ERISA defines an employee

welfare benefit plan as "any plan, fund, or program . . . established or maintained

by an employer or by an employee organization, or by both, to the extent that such

plan, fund, or program was established or is maintained for the purpose of

providing for its participants or their beneficiaries, through the purchase of

insurance or otherwise, (A) medical, surgical, or hospital care or benefits. . . ."  29

U.S.C. § 1002(1).  An employer is defined as

> any person acting directly as an employer; or indirectly in the interest
> of an employer, in relation to an employee benefit plan; and includes
> a group or association of employers acting for an employer in such
> capacity.

29 U.S.C. § 1002(5).  Significantly, it is possible under ERISA for a multiple

13

employer welfare arrangement (a "MEWA") to function as if it were a single
employer providing a group health insurance plan.  In order for such an
association of employers to meet ERISA's definition of an employer under section
1002(5), however, the association must be a "bona fide association" of employers
wherein the employer members have control of the association.  An unrelated
group of employers (even employers in the same line of business) that merely
executes similar documents to purchase insurance together is not an ERISA
employer.  *Crull v. Gem Ins. Co.*, 58 F.3d 1386, 1389 (9th Cir. 1995) ("A multiple
employer trust is an entity established to procure group insurance coverage for
otherwise unrelated employers.  By aggregating their buying power, these
unrelated employers can negotiate for better health insurance programs.").  The
Department of Labor has expressed the view that

> . . . where several unrelated employers merely execute similar
> documents or otherwise participate in an arrangement as a means to
> fund benefits, in the absence of any genuine organizational
> relationship among employers, no association exists for the purposes
> of § 3(5) [29 U.S.C. § 1002(5)] or where control of the association is
> not vested solely in employer members, the association is not a bona
> fide association of employers for purposes of § 3(5) [29 U.S.C. §

14

1002(5)].

Dep't of Labor, "Multiple Employer Welfare Arrangements Under ERISA, a Guide to Federal and State Regulation" (Doc. 1-4).

According to the Affidavit of Webb Scott Brown, the President/CEO of Montana Chamber of Commerce, both AMI and MCCT are associations comprised of unrelated employers having no genuine organizational relationship between the employer participants.  (Doc. 12-1, ¶ 3.)  The employer participants do not exercise control over either AMI or MCCT.  (Doc. 12-1, ¶ 4.)  Thus, neither AMI nor MCCT is an ERISA employer.  This means that neither the AMI Arrangement nor the MCCT Arrangement can be a bona fide "association of employers acting for an employer" in relation to an employee benefit plan within the meaning of section 1002(5).  The Arrangements are purchasing consortiums, but the actual group health insurance plans exist at the participating employer level.  If there are 600 employers in the MCCT, for example, then there are 600 employee benefits plans, not one plan.

The next step in analyzing the motion for summary judgment requires

15

application of 29 U.S.C. § 1182(b) to these facts.  As this statute makes clear,

§ 1182(b) applies to prohibit premium disparity based on health status factors at

the individual level but not at the employer level.  In other words, an individual

employee participating in an employer's group health plan cannot be charged more

because of his health status.  An employer group health plan, however, can be

charged a higher premium due to health status factors present among the

individual employees–as long as the increased premium is borne equally by all

participants in that employer's group health plan.  Accordingly, BCBSMT's

method of premium calculation for the AMI/MCCT Arrangements, which takes

into account health status factors when rating the employer plans separately, is

permissible under ERISA's section 1182(b).

**MOTION TO STRIKE**

Defendant BCBSMT has filed a Motion to Strike Plaintiffs' Affidavit of

Dale Fossen (¶¶ 4-6) (Doc. 16-2), and Plaintiffs' Statement of Genuine Issues (¶¶

1-2, 4-5 (containing hearsay statement of Mr. Olson).  The statements which

Defendant wishes to have stricken from the record all support Plaintiffs claim that

16

there was a promise made by BCBSMT to the insurance agent, Roger Olson, to the
effect that premiums would be uniform across all employers participating in the
AMI Arrangements.  BCBSMT objects to this evidence as being inadmissible
hearsay not supported by any other evidence in the record.  BCBSMT also objects
to Plaintiffs' attempted introduction of evidence for a supposed claim not alleged
in the Amended Complaint.  The Court finds that the Amended Complaint is silent
as to any such allegation of occurrences or circumstances raising a genuine issue
of material fact.  Finally, BCBSMT objects to this evidence because the alleged
breach, assuming it ever existed, was long ago cured:  In 2006, when BCBSMT
was apprised by the Montana Department of Insurance of the Plaintiffs' complaint,
BCBSMT explained in detail its premium calculation method and offered not to
impose the 21% premium increase for the upcoming plan year, giving the FBF
Plan a one-year moratorium on the proposed rate increase.  Since 2006, Plaintiffs
have annually renewed their BCBSMT group health insurance plan in each of the
three years following.  Thus, Plaintiffs did not, in fact, suffer the unexpected 21%
premium increase in 2006, and Plaintiffs were notified of BCBSMT's future intent

17

to rate the FBF Plan separately from other plans participating in the AMI/MCCT Arrangements.  Plaintiffs continued to obtain their insurance through the Arrangements even after being notified of the possibility of future premium increases.  Under these circumstances, there can be no damages.  Plaintiffs cannot force BCBSMT to sell a product at the price Plaintiffs prefer.

This alleged misrepresentation by BCBSMT to Roger Olson has not been alleged as a claim in the Amended Complaint.  It is hearsay.  At the time of hearing, the Plaintiffs did not supplement the record by further affidavit, testimony, or other evidence.  There is no evidence before the Court of bad faith or wrongdoing on the part of Defendant.  It appears to the Court from Defendant's Exhibit A (Doc. 24-1) that there are some 600 employers who have coverage through AMI, through 40 plus insurance agents, and Defendant states that this is the only complaint of this type received.  There is no evidence of "bait and switch."  The contract was for a term of one year, and when the misunderstanding came to light, Defendant adjusted the cost--for the succeeding one-year period only--in accordance with the Plaintiffs' mistaken understanding.  The problem was

18

thus corrected by BCBSMT's clarification of the Plaintiffs' misunderstanding and the one-year moratorium on the 2006 rate increase. Plaintiffs apparently accepted that solution because Plaintiffs chose to renew the policy despite the premium increases that began thereafter. BCBSMT argues that it would be futile for Plaintiffs to amend the Amended Complaint to assert this claim, and this Court agrees that such an amendment would be futile.

Plaintiffs argued extensively at the hearing that the Court erred in denying the motion to remand and that this Court has no jurisdiction in this case because Plaintiffs' claim relates to a duty independent of the FBF employee welfare benefit plan. Plaintiff cites *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009), which holds that when plaintiff asserts that the plan administrator violates a legal duty that is independent of the ERISA plan, the cause of action is not completely preempted. In *Marin General Hospital* the plaintiff hospital had an oral telephone agreement with the employer/plan administrator that 90% of a patient's medical expenses at the hospital would be covered by the ERISA plan. The defendant employer/plan administrator paid only

19

$46,655.54 of the $178,926 bill, and denied that it had a contract with the hospital. Our case is slightly similar to *Marin General Hospital* because there was a phone conversation between an insurance agent and the Defendant insurer which arguably gave rise to an independent legal duty.  However, our case is vastly different from *Marin General Hospital* because plaintiffs then filed a suit alleging that the insurance policy sold by the Defendant violated a Montana statute, which turns out to be identical to an ERISA statute having a remedy under ERISA section 502(a).

The instant suit is a legal challenge–a declaratory judgment action–to Defendant BCBSMT's right to sell such a policy under the applicable statutes. Because ERISA contains the identical statute as the Montana statute, ERISA completely preempts the Montana statute.  The crucial point to be made in any discussion of *Marin General Hospital* is that the "independent legal duty" argument is a red herring in the context of this case.  The gravaman of Plaintiffs' Amended Complaint is a statutory challenge to the actual policy sold, not a claim based upon an independent legal duty.

20

The independent legal duty argument appears to be an attempt to avoid ERISA and federal jurisdiction.  However, the true motivation for this case is to stop Defendant BCBSMT from selling insurance to employers purchasing through heterogenous associations without providing true risk pooling to all the participant subscribers.  That is the declaratory judgment sought by the Amended Complaint.

Unlike the plan administrator in *Marin General Hospital*, this Defendant cleared up the telephone miscommunication in 2006, gave the Plaintiffs the one-year premium relief, and essentially administratively corrected any mistake it may have made.  (This would be as if the plan administrator in *Marin General Hospital* paid the extra $114,378 of the 90% it had allegedly agreed to pay by oral agreement.)  Thus, a careful reading of the Amended Complaint shows that any independent legal duty of BCBSMT is not actually at issue in this case–and as BCBSMT points out, that alleged independent legal duty was not pled in the Amended Complaint.  These contentions raised by the non-moving party of claims not raised in the Amended Complaint do not present genuine issues of material fact.  The only claim left to Plaintiffs is the claim advanced by the Amended

21

Complaint, which is whether BCBSMT had the statutory right to provide them with the policy that it actually did provide, and this Court finds that it did have that right.

**CONCLUSION**

The Court concludes that BCBSMT is entitled to summary judgment as a matter of law, there being no genuine issue as to any material fact and the law favoring Defendant.  Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Doc. 11) is GRANTED, and Plaintiffs' Amended Complaint is DISMISSED.  Let judgment enter.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (Doc. 21) is moot.

DONE and DATED this 6th day of October, 2010.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

22