Lawrence A. Anderson
Attorney at Law, P.C.
300 4th Street North
P.O. Box 2608
Great Falls, MT 59403-2608
Telephone: (406) 727-8466

Attorney for Plaintiffs


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | | |
|---|---|---|
| Dale Fossen, et al., | ) | |
| | ) | **Cause No.: CV 09-61-H-CCL** |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | **PLAINTIFFS' BRIEF IN** |
| | ) | **OPPOSITION TO DEFENDANT'S** |
| Blue Cross Blue Shield of | ) | **MOTION FOR ATTORNEYS'** |
| Montana, Inc., | ) | **FEES AND COSTS** |
| | ) | |
| Defendant. | ) | |

_____

## <u>INTRODUCTION</u>

Defendant Blue Cross and Blue Shield of Montana (Blue Cross) seeks

attorneys' fees in excess of $100,000 against the Plaintiffs, a family business.  Blue

Cross's motion is inequitable and unfounded in fact and in law.  Its apparent

purpose is to deter the Plaintiffs from a meritorious appeal.

The groundless nature of the fee request dramatically is seen on the second

page of Defendant's brief.  Here Defendant reveals, for the first time, that several other customers complained to the Montana Insurance Department about the marketing in issue here.  This evidence contradicts the court's findings that Plaintiff's complaint was "the only complaint of this type received" and that "there is no evidence of 'bait and switch.'" (Doc. 31, p. 18)  Had this evidence been revealed earlier, summary judgment might not have issued.

This court held that Blue Cross cured any breach by postponing rate increases for a year.  But Plaintiffs have reasonable grounds for contesting that holding on appeal.  Blue Cross promised the Plaintiffs and other customers ongoing "pooled risk" status.  That promise was <u>not</u> limited to a single year, and a breach could not be cured by postponing the breach for a year.

Plaintiffs, thus, have legitimate grievances and a well-founded breach-of-contract claim which is shared with other Blue Cross customers.  Plaintiffs, moreover, have raised important issues with regard to ERISA, some of which are of first impression.  An affidavit of a former Montana Insurance Commissioner, filed with this brief, supports the Plaintiffs' position on ERISA.

The record, thus, establishes Plaintiffs' good faith and the equitable nature of their claims.  An additional affidavit shows their inability to pay fees.  A fee award clearly would be improper.  Blue Cross should not be allowed to deter a meritorious appeal.

## STATEMENT OF FACTS

### Roger Olson's Affidavit

The most important evidence of record is Roger Olson's affidavit.  (Doc. 23-1)  The court made reference to some points in the affidavit in its order (Doc. 31, pp. 7, 18, 20), but never cited it directly and seems to have given it little weight.

Olson is a Blue Cross agent, authorized as such for 15 years, and trained on a regular basis in marketing and servicing Blue Cross products.  (Doc. 23-1, ¶¶ 5-7)  His affidavit verifies all the allegations made by Dale Fossen.  (Id., ¶ 10)  In addition, it states expressly:

- Olson told the Fossens that (1) the Associated Merchandisers, Inc. (AMI) plan was a "true pooled risk plan;" (2) "Fossen Brothers would be rated only once and would not be rerated during their participation in the plan;" and (3) "any increase in premiums would be a pool wide increase that everyone in the association would share."  (Id., ¶ 11)

- Before making these representations to the Fossens, Olson confirmed them with Bob Hart, Blue Cross's Vice President in Charge of New Business Development.  (Id., ¶ 11)

- Contrary to these representations, Blue Cross increased Fossen Brothers' premiums at a greater rate than those of other AMI members (some of whom were given premium decreases).  (Id., ¶ 12)

Dale Fossen complained to the Montana Insurance Department about the disproportionate premium increase.  Olson wrote a letter supporting that complaint. (Id., ¶ 12)  The letter is of record as an exhibit.  (Id., Ex. A)

In the letter, Olson described his interaction with the Fossens.   He stated that (after the Fossens had decided to buy a different plan) he received an e-mail from Blue Cross's marketing department which promoted the AMI plan.  (Id., Ex. A, p.2)  Olson recalls:

> I called Bob Hart in Kalispell and asked if the AMI plan would work like other association plans and if it would be a pooled risk plan. After discussing the issue Mr. Hart faxed copies of brochures and new rates concerning the AMI plan for the Fossen Brothers Farms group to my office.
>
> I drove to Fossen Brothers Farms office in Inverness, Montana and explained that even though they had agreed to purchase the Community Block Advantage plan, we should look at the AMI Advantage plan.  I explained that the Advantage plans were exactly alike but that the AMI product would provide their group with even more protection from increasing premiums.  I went on to explain that the Community Block plans are rated for renewal each year using the factors which are: a rate increase or decrease based on the block as a whole, then each individual group is reviewed each year for medical risk and demographic risk increases or decreases.
>
> In comparison, the pooled risk association plan underwrites the group when they enter the plan and at renewal the block as a whole is rated based on past utilization and future risk, the individual groups would not be re-rated each year!  …  And finally I informed them that the actual premium savings was not a lot but that I have always told clients on the Community Block plans to count on 15% to 20% increases each year.  Hopefully an association plan like AMI would level out those yearly rate increases to 10% or under per year.

(<u>Id</u>., Ex. A, p. 2 (emphasis added))

Olson relates that the Fossen brothers "referred 6 or 7 of their neighbors to my office and each group purchased an AMI contract."  (<u>Id</u>., Ex. A, p. 3)  But 13 months after the Fossens' purchase, Blue Cross notified Olson of forthcoming changes in the AMI plan.  Olson states:

> I called Bob Hart and we discussed my concerns that there is NO WAY that AMI could have rolling renewal dates and manage the plan as a true pooled risk plan … I also informed him that I had a BIG PROBLEM because <u>I had told all of these groups that they WOULD NOT be individually rated at renewal each year</u>!

(<u>Id</u>., Ex. A, p. 3 (capitalization in the original; emphasis added))

Olson's affidavit shows the strong equities supporting Plaintiffs' Complaint. By the admission of Blue Cross's agent, Blue Cross misled the Plaintiffs, and numerous other customers, as well as its sales force in the field.  The customers were promised ongoing membership in a pool wherein "individual groups would not be re-rated each year."

Blue Cross demonstrably breached this promise.  It now admits that several customers other than the Plaintiffs complained about the breach.  The breach could <u>not</u> cured by a one-year rate reduction, since the promise called for ongoing pooled -rate status over a period of years.  Olson's statements clearly support Plaintiffs' claim and their arguments on a proposed appeal.

**The Summary Judgment Order**

On Oct. 6, 2010, this court ordered summary judgment in favor of Blue Cross.  (Doc. 31)  Plaintiffs wish to appeal this decision.  Plaintiffs respectfully identify the following points as reasonable grounds for an appeal:

- Plaintiffs' breach of contract claim.  This court held that Plaintiffs failed to plead a breach-of-contract claim involving an "independent legal duty" not preempted by ERISA.  (Doc. 31, pp. 19-21)  Plaintiffs, however, did plead a separate count of common-law breach of contract.  (Doc. 1-2, pp. 7-8)  Plaintiffs supported this claim, in response to the summary judgment motion, with affidavits of Dale Fossen and Roger Olson detailing the promises made.  (Docs. 16-2, 23-1)

  Plaintiffs also asked leave to amend their Complaint if the court should hold their breach-of-contract claim inadequately pled.  Plaintiffs stated that "if an amendment were needed to clarify the [breach-of-contract] claim, that amendment clearly should be allowed at this early stage of the litigation." (Doc. 23, p. 4)

- Futility of amendment.  The court held that it would be futile for Plaintiffs to amend their Complaint to clarify their breach-of-contract claim.  (Doc. 31, pp. 18-19)  The grounds for this holding were (1) that Blue Cross's statements to Roger Olson were hearsay; (2) that there is no

evidence of wrongdoing; (3) that "Defendant states that this is the only complaint of this type received;" and (4) that the contract was for one year, and Blue Cross corrected the misunderstanding when it deferred the rate increase for a year.  (Id.)

Plaintiffs respectfully submit that they have good grounds for contesting each point.  For the following reasons, their breach-of-contract claim is viable, and an amendment of their Complaint would not be futile:

(1) <u>Hearsay</u>.  Roger Olson and Bob Hart both are Blue Cross's agents, making statements concerning matters within the scope of their employment.  Accordingly, Olson's statements regarding his conversations with Hart are not hearsay.  <u>See</u> F. R. Evid. 801(d)(2)(D); *Fonseca v.  Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (reversing summary judgment, where employees' statements fell within Rule 801(d)(2)(D)); *Sea-Land Service, Inc. v. Lozen International, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (reversing summary judgment under Rule 801(d)(2)(D), where the district court had excluded an employee's statement conveying a second employee's statement).  Olson's affidavit provides foundation for Hart's statement by stating Hart's

authority over Blue Cross's New Business Development

department.  Cf.  *Sea-Land Service*, 285 F.3d at 821.

(2) <u>Evidence of wrongdoing</u>.  Olson's affidavit states a prima facie

case of wrongdoing by Blue Cross.  Olson asserts that before he

made promises to the Fossens, he expressly confirmed them with

Hart.  (Doc. 23-1, ¶ 11)  When Olson learned of the proposed

changes to the AMI plan, he protested, emphatically pointing out

that those changes would violate the promises made.  (<u>Id</u>., Ex. A,

p. 3)  But Blue Cross proceeded to change the plan with full

knowledge of those violations.

(3) <u>Other complaints</u>.  Blue Cross belatedly has revealed that "at least

four" other businesses complained of the marketing practices at

issue here.  (Doc. 34, p. 2)  This court was unaware of those other

complaints when it held: "Defendant states that this is the only

complaint of this type received.  There is no evidence of 'bait and

switch.'"  (Doc. 31, p. 18)  Blue Cross's admission creates an issue

of material fact as to whether it engaged in "bait and switch" or in

other improper marketing practices.

(4) <u>One-year contract</u>.  The court held: "The contract was for a term of

one year, and … [t]he problem was thus corrected by … the one-

year moratorium on the 2006 rate increase." (Doc. 31, pp. 18-19) Crucially, however, Blue Cross's promise was that "at renewal [of each one-year contract] the block as a whole is rated … the individual groups would not be re-rated each year!" (Doc. 23-1, Ex. A, p. 2) Thus, the promise of pooled-risk status was <u>ongoing</u>, and the breach could not be cured by postponing re-rating by one year.

For the foregoing reasons, an amendment would not be futile. If Plaintiff's present Complaint is inadequate to state a breach-of-contract claim, an amendment citing the foregoing points demonstrably would state a viable claim.

- <u>Legislative history of ERISA §702(b)</u>. In their brief opposing summary judgment, Plaintiffs raised a crucial point which the court did not address in its subsequent order. That point is the legislative history of ERISA §702(b) (the counterpart to §33-22-526(2), MCA – the "little HIPAA law" on which Plaintiffs principally based their Complaint).

    That history shows that Congress intended "the narrowest preemption" and that "[s]tate laws which are broader than federal requirements would not prevent the application of federal requirements." H. Conf. Rep. No. 104-736, *as reprinted in* 1996 U.S.C.C.A.N., p. 2018

(cited by Plaintiffs at Doc. 15, p. 26).  The Department of Labor

regulations implementing §702(b), moreover, state:

> (a) *Continued applicability of State law with respect to health insurance issuers.*  Subject to paragraph (b) of this section and except as provided in paragraph (c) of this section, part 7 of subtitle B of Title I of <u>the Act is not to be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with group health insurance coverage</u> except to the extent that such standard or requirement prevents the application of a requirement of this part.

29 C.F.R. §2590.731(a) (emphasis added) (cited at Doc. 15, p. 26).

Plaintiffs argued that, under this authority, "§702 provides a floor,

and not a ceiling, for regulation by the state."  (Doc. 15, p. 26)  Montana

can regulate Blue Cross's marketing under §526 more strictly than

ERISA does under §702 -- <u>e.g.</u>, by treating MEWAs as "employers"

where ERISA would not do so.[1]  Montana also can regulate Blue Cross

under common-law principles and under the alternative Montana statute

---

[1] AMI and Chamber Choices, through which Blue Cross sold Plaintiffs insurance, are MEWAs (multiple employer welfare arrangements).  A MEWA may be an "employer" for ERISA purposes if it is a "bona fide association" of employers. This court held that AMI and Chamber Choices are not "bona fide associations" under the Department of Labor's ERISA standards.  (Doc. 31, pp. 14-15)  Montana, however, is free to apply this concept more broadly in regulating MEWAs under §33-22-526, MCA.

cited in Plaintiff's Complaint -- §33-18-206(2), MCA.[2]

The foregoing analysis was emphasized in Plaintiffs' brief, but was not addressed in this court's order. It appears to be an issue of first impression. Plaintiffs reasonably relied upon this argument and reasonably anticipate that the Ninth Circuit may sustain it on appeal.

- <u>State authority to regulate MEWAS which are not "fully insured."</u> Another argument raised by the Plaintiffs never was responded to by Blue Cross and was not analyzed by the court. ERISA grants the States plenary authority to regulate MEWAs which are not "fully insured." <u>See</u> 29 U.S.C. §1144(b)(6)(A). A MEWA is "fully insured" for this purpose only if the Secretary of Labor expressly declares it to be so. *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 236 (5th Cir. 2007).

Plaintiffs stressed this argument in their summary judgment brief. (Doc. 15, pp. 17-19) Blue Cross did not respond, and never has offered proof that it has been declared "fully insured." Plaintiffs reasonably relied upon this argument, and reasonably anticipate that the Ninth Circuit may sustain it on appeal.

---

[2] §33-18-206(2) states a mandate similar to §526, but in broader and more general terms ("No person shall make or permit any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium …"). This statute, unlike §526, has no counterpart under ERISA.

## John Morrison's Affidavit

Filed with this brief is an affidavit of John Morrison, who was Montana's Insurance Commissioner from 2001-2008.  (Doc. 37-1)  Morrison served as Chairman of the Health Insurance and Managed Care Committee of the National Association of Insurance Commissioners.  (Doc. 37-1, ¶ 2)  He has testified in Congress on matters related to ERISA, has lectured on ERISA preemption at law schools, has published articles on ERISA preemption, and is about to keynote a national symposium on ERISA.  (Id., ¶ 3)

Morrison states that the Montana Insurance Department's long-settled position is that associations like those in question here are "bona fide associations" subject to Montana's "little HIPAA law," §33-22-526, MCA.  (Id., ¶ 5)  He attaches a 1997 letter, predating his term in office, in which the Department notified Blue Cross and other health insurance carriers:

> Coverage to members and their employees will be deemed "group" and not "individual" coverage.  Generally, coverage through associations will be in the large group market, or <u>the employees of all association members are considered to be employees of one employer</u>.

(Id., ¶ 5 and Ex. 2 (emphasis added))

Morrison states that, during his tenure, the Insurance Department's position was that the "little HIPAA law" required group health plans to be "community rated."  (Id., ¶¶ 6, 9)  "Community rating" means that "the health insurance premiums are the same for all of the businesses that are members of the

association's group plan." (Id., ¶ 8)

Morrison verifies that Dale Fossen contacted his office to complain of disproportionate fee increases under the AMI plan. (Id., ¶ 7) He also verifies that Roger Olson informed his office that Olson had sold the AMI plan believing that it was community rated, on the advice of a Blue Cross executive. (Id., ¶ 8)

Morrison attests that all, or nearly all, states in America regulate group health plans as Plaintiff contends they are authorized to do. He states specifically:

> 9. As far as I know, every state – or nearly every state – in America has a "little HIPAA law," such as Montana's § 33-22-526, MCA, as well as a small group health insurance law, such as Montana's § 33-22-1809, MCA. Some states consider insured association plans to be regulated by the "large group" community rating laws set forth in the little HIPAA statutes. Some states consider the insured association plans to be regulated by the small group rating statutes.

> 10. To my knowledge, no American court (prior to this case) has ever found that ERISA preempts the power of the states to regulate premium rates for health insurance issued in connection with group health plans. If such a holding became widely adopted, it would void the large and small group rating statutes that exist in the insurance codes of every state in America.

> 11. Insurance commissioners are aware that federal HIPAA laws (regarding risk pooling) create a floor below which states may not go, but that states may regulate insurance rates more strictly. This point has been made clear by the United States Department of Labor which has jurisdiction over ERISA preemption, in the Code of Federal Regulations. See 29 CFR § 2590.731(a) attached hereto as Exhibit 5.

(Id., ¶¶ 9-11 (emphasis added))

Morrison's affidavit clearly establishes Plaintiffs' good faith in arguing the

core claims which are pleaded in their Complaint.  Those claims, invoking Montana's authority to regulate association plans under its "little HIPAA law," are supported by legislative history, by federal regulations, and by existing practice across the country.

## Dale Fossen's Second Affidavit

Filed with this brief is the Second Affidavit of Dale Fossen, one of the Plaintiffs in this matter.  (Doc. 37-2)  It responds to Blue Cross's contention that the Fossen brothers are capable of paying more than $100,000 in attorneys' fees.

Fossen's affidavit states that neither he nor his brothers have liquid assets sufficient to satisfy such a claim. (Doc. 37-2, ¶ 2)  Their interest in the family farm is shared with other siblings who are not involved in this litigation.  (Id., ¶ 3)  Dale's own liquid assets amount to only about $30,000 in cash.  (Id., ¶ 4)  His brothers who are fellow plaintiffs are in a similar situation.  (Id.)

## ARGUMENT

## APPLYING THE *HUMMELL* FACTORS, THIS COURT SHOULD DENY DEFENDANT'S CLAIM FOR ATTORNEYS' FEES.

### A. Ninth Circuit Case Law on Attorneys' Fees

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. §1132(g)(1).  The Ninth Circuit has established criteria governing the exercise of this discretion.

Those criteria (known as the "*Hummell* factors") include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the
> ability of the opposing parties to satisfy an award of fees; (3) whether
> an award of fees against the opposing parties would deter others from
> acting under similar circumstances; (4) whether the parties requesting
> fees sought to benefit all participants and beneficiaries of an ERISA
> plan or resolve a significant legal question regarding ERISA; and (5)
> the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980); *Simonia v.*

*Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119 (9th Cir. 2010)

(confirming that the *Hummell* factors still apply).

As Blue Cross contends, "the playing field is level," and fees can be

awarded to defendants as well as to plaintiffs.  *Estate of Shockley v. Alyeska*

*Pipeline Service Co.*, 130 F.3d 403, 408 (9th Cir. 1997).  The analysis "must focus

only on the *Hummell* factors, without favoring one side or the other."  Id.

In applying the *Hummell* factors, however, Ninth Circuit cases also stress

"the remedial purpose of ERISA on behalf of beneficiaries and participants."

*Honolulu Joint Local Union No. 675 v. Foster*, 332 F.3d 1234, 1239-40 (9th Cir.

2003).  The *Hummell* factors "are based on equitable principles that are generally

more relevant in consideration of a plaintiff's motion for attorney's fees than a

defendant's motion."  *Norwood v. Leland Stanford Junior University*, 2009 WL

69354 *3 (N. D. Cal. Jan. 9, 2009).  See, e.g., *Arizona State Carpenters Pension*

*Trust Fund v. Citibank*, 125 F.3d 715, 725 (9th Cir. 1997) (the fourth *Hummell*

factor is "more appropriate to a determination of whether to award fees to a plaintiff than a defendant").

The Ninth Circuit has repeatedly denied defendants attorneys' fees in close cases.  In *Arizona State Carpenters*, the Court affirmed summary judgment dismissing ERISA claims, but held that the *Hummell* factors did not significantly favor the defendant:

> A look at all the factors does not show that the balance struck significantly favors Citibank.  Mindful that <u>awarding appellate attorneys' fees in close cases might deter participation in the appellate process</u>, we conclude that an award of appellate attorneys' fees to Citibank would be inappropriate.

125 F.3d at 725 (emphasis added).

In *Foster*, the plaintiff had "a strong equitable argument," but the defendant was properly granted summary judgment under ERISA.  332 F.3d at 1239.  The Ninth Circuit held that "[a]t most, only one of the five *Hummell* factors" (relative merits) favored the defendant.  Therefore, a fee award was properly denied.  <u>Id</u>. at 1240.  <u>See also</u> *Hope v. International Brotherhood of Electrical Workers*, 785 F.2d 826, 831 (9th Cir. 1986) (fee award denied; losing plaintiffs' position was "incorrect," but "not unmeritorious").

Again, in *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000), the Ninth Circuit upheld a denial of fees to defendants who had succeeded in dismissing the plaintiffs' claims by summary

judgment.  Although "the playing field is level," the Court approved the district court's declaration of "hesitancy" to find the plaintiffs in bad faith.  It stated:

> [I]n order to avoid a finding of bad faith under the *Hummell* factors, <u>plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim</u>.  While Appellants failed to prove any of their claims, the Record contains enough documentary material to support the trial court's conclusion that a reasonable basis existed for Appellants to make their claims.

<u>Id</u>. at 1236 (emphasis added).

As in the foregoing cases, the *Hummell* factors do not support an award of attorneys' fees here.  Each factor will be assessed below.

**B. <u>Application of the *Hummell* Factors</u>**

**1. <u>The degree of the opposing parties' culpability or bad faith</u>.**

Blue Cross argues that Plaintiffs are guilty of "culpability or bad faith" because (1) "Plaintiffs cannot force BCBSMT to sell a product at the price Plaintiffs prefer" and (2) Plaintiffs had "actual knowledge of the one-time premium adjustment and BCBSMT's future rating intent" but still argued that "BCBSMT made misrepresentations to Mr. Olson."  (Doc. 34, p. 7)  These contentions have no merit.  Blue Cross completely ignores the content of Roger Olson's affidavit.

The affidavit emphatically shows that Blue Cross made "misrepresentations to Mr. Olson."  (<u>See</u> Doc. 23-1, ¶ 11 and ex. A, pp. 2-3)  They <u>preceded</u> Blue Cross's one-time premium adjustment, which was inadequate to rectify the breach.  (<u>See</u> <u>id</u>.)  Plaintiffs do <u>not</u> seek to force Blue Cross to sell insurance "at the price

they prefer," but rather to sell it in the manner that Blue Cross promised -- that is, with pool-wide rating adjustments.  (See id.)

Plaintiffs, thus, have a legitimate grievance, based upon unrebutted facts. Moreover, they have reasonable legal arguments, as summarized above.  Plaintiffs' breach-of-contract claim finds direct support in *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009).  (See Doc. 15, pp. 22-24)  Their arguments against ERISA preemption find direct support in the statute's legislative history, in federal regulations, and in the *Custom Rail* case. (See Doc. 15, pp. 17-19, 25-27)

The reasonableness of Plaintiff's ERISA arguments is powerfully shown by John Morrison's affidavit.  Morrison attests that all, or nearly all, fifty states regulate group health plans under "little HIPAA laws" like § 33-22-526, MCA, on which the Plaintiffs rely here.  (Morrison Aff., ¶ 4)  These laws rest on the premise that Plaintiffs have argued to this court – that ERISA's § 702 "provides a floor, and not a ceiling, for regulation by the state."  (Doc. 15, p. 26; Morrison Aff., ¶ 11)

Plaintiff's good faith in bringing the present action conclusively is shown by the foregoing matters.  The Ninth Circuit's *Hummell* factor cases show that there is no "culpability or bad faith" here.

In *Foster*, the Ninth Circuit held that there was no bad faith, where the plaintiff had a "strong equitable argument," despite losing by summary judgment

under ERISA.  <u>See</u> 332 F.3d at 1239.  In *Cline*, the Ninth Circuit stated: "[T]o avoid a finding of bad faith … plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim").  <u>See</u> 200 F.3d at 1236.

Plaintiffs clearly had reasonable grounds to bring their claims here, and they manifestly have "a strong equitable argument," as in *Foster*.  This court should hold that the first *Hummell* factor does not support a fee award.

## 2.  <u>The ability of the opposing parties to satisfy an award of fees</u>.

Plaintiff Dale Fossen has filed an affidavit stating that neither he nor his brothers have liquid assets to satisfy Blue Cross's fee claim.  Their interest in the family farm is shared with several other siblings not involved in this litigation. (<u>See</u> Second Aff. of Dale Fossen, filed herewith)

Blue Cross, by contrast, clearly is able to pay its own attorneys' fees.  It would be inequitable to grant fees on this record which would burden a family farm.  The court should hold that the second *Hummell* factor does not support a fee award.

## 3.  <u>Whether an award of fees would deter others from acting under similar circumstances</u>.

Plaintiffs' action is based upon a legitimate grievance -- the breach of a promise shown by unrebutted evidence and attested to by Blue Cross's own agent.  Moreover, Plaintiffs have raised issues of first impression under ERISA.  Their

position is supported by legislative history, federal regulations, and existing

practice nationwide.  These factors militate against awarding fees to deter future

plaintiffs.

In *Foster*, as in the present case, the plaintiff "had a strong equitable

argument" and its claim "would have clarified the law in an uncertain area." 332

F.3d at 1239.  For those reasons, the Ninth Circuit stated that "we see no need to

deter actions of this kind."  <u>See also</u>  *Arizona State Carpenters*, 125 F.3d at 725

(awarding fees in close cases improperly "might deter participation in the appellate

process"); *Shockley*, 130 F.3d at 408 (fee awards should not "unduly chill

meritorious claims").

An award of fees in the present case would have the perverse effects warned

of above.  Customers with equitable claims against insurers would be deterred

from pursuing them if the law was uncertain.  Such a result would contravene the

remedial policy of ERISA.  This court should hold that the third criterion does not

support an award of fees.

### 4.  <u>Whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA.</u>

This factor is "more appropriate to a determination of whether to award fees

to a plaintiff than a defendant." *Arizona State Carpenters*, 125 F.3d at 725.

Insofar as it applies, the criterion does not favor Blue Cross.  Blue Cross's position does <u>not</u> benefit "all participants" in the AMI and Chamber Choices plans, but only those (the ones with healthier employees) who profit from being rated individually rather than on a pool-wide basis.

### 5.  <u>The relative merits of the parties' positions</u>.

This court ruled in Blue Cross's favor on the merits.  However, as shown above, the Plaintiffs have reasonable grounds for an appeal.  The court should be mindful of the equities shown in Olson's affidavit and of the belatedly-revealed evidence of similar complaints by other Blue Cross customers.  It also should be mindful that Plaintiffs' position is supported by legislative history, federal regulations, and existing practice nationwide.

Merely prevailing by summary judgment against "a strong equitable argument" does not support an award of fees.  <u>See</u> *Foster*, 332 F.3d at 1239; *Hope,* 785 F.2d at 831 (fees properly denied where the plaintiffs' position was "incorrect" but "not unmeritorious").  This court should hold that the final *Hummell* factor does not support an award.

In sum, the *Hummell* factors do not support an attorneys' fee award here. Unrebutted evidence shows that Blue Cross breached express promises both to the Plaintiffs and to other customers.  Awarding fees in this matter would have no basis in equity, in the public policies underlying ERISA, or in controlling Ninth

Circuit case law.

## CONCLUSION

Blue Cross's request for attorneys' fees against family farmers, under the record in this matter, has no basis in law or equity.  The Ninth Circuit repeatedly has denied fees in similar cases.  This court, accordingly, should decline to grant Blue Cross an award of fees.

Respectfully submitted,

DATED this 28th day of October 2010.

<div style="margin-left:40%">

/s/ Lawrence A. Anderson
Lawrence A. Anderson,
Attorney at Law, P.C.
P.O. Box 2608
Great Falls, Montana 59403
laa@silverstatelaw.net

</div>

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that Plaintiffs' Brief in Opposition to Defendant's Motion for Attorneys' Fees and Costs is double spaced, proportionately spaced, typed in Times New Roman, has a typeface of 14 points, and contains 4797 words.

/s/ Lawrence A. Anderson
Lawrence A. Anderson
Attorney for Plaintiffs