IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| DALE FOSSEN, D and M FOSSEN, INC., LARRY FOSSEN, L and C FOSSEN, M and C FOSSEN, INC., and FOSSEN BROTHERS FARMS, a PARTNERSHIP,<br><br>                Plaintiffs,<br><br>   vs.<br><br>CARING FOR MONTANANS, INC., f/n/a Blue Cross and Blue Shield of Montana, Inc.,<br><br>                Defendant. | CV 09–61–H–CCL<br><br>OPINION & ORDER |

Before the Court are motions filed by the parties. Defendant has filed its second Motion for Summary Judgment. Plaintiffs have filed their second Motion for Remand or, in the alternative, Motion to Certify Questions. Each motion is opposed. Having considered the briefs and arguments of the parties, the Court is prepared to rule.

1

**Background**

This case returns to the Court on remand from the Court of Appeals of the Ninth Circuit, following this Court's grant of summary judgment to Defendant. The Ninth Circuit panel affirmed this Court's finding that a Montana statute, Mont. Code Ann. § 33-22-526(2)(a), was preempted by an identical ERISA statute, 29 U.S.C. § 1182(b)(1). *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1111-12 (9th Cir. 2011). This Court also found that AMI/MCCT[1] met the federal definition of a multiple employer welfare association for purposes of the federal statute. Because this Court did not provide a legal analysis of Plaintiffs' non-preempted state claim for appellate review, the panel remanded for further proceedings by this Court in that regard.

This opinion will provide a legal analysis of Plaintiffs' non-preempted state claims for the purpose of determining whether Plaintiffs should be permitted to proceed on their Amended Complaint or whether final summary judgment should be granted to Defendant, as is now requested.

**Second Motion for Remand**

---

[1] The Health First Traditional 50/50 plan was offered by Associated Merchandisers, Inc. Association ("AMI"). (Doc. 24-1.) In 2008, Montana Chambers Choices Trust ("MCCT") merged with AMI. (Doc. 12-1.)

Before addressing Defendant's summary judgment motion, however, the Court must consider Plaintiff's second motion for remand to state court and alternative motion for certification of questions to the Montana Supreme Court. Having considered the parties' arguments, it is this Court's belief that the state claims are not unclear and they do not raise complex issues of state law. Because this Court has delved deeply into the federal claim upon which summary judgment was granted and has invested considerable resources in this litigation, and because the state law claims are fundamentally dependent upon and/or restricted by that federal claim, it would be a waste of judicial resources to remand this case to a state district court for litigation beginning anew.

The decision to certify a question to a state supreme court is discretionary. *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003). Even when state law is unclear, certification is not obligatory. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). In this case, the Court remains dubious of Plaintiffs' assertion that state insurance law is unclear, and therefore the Court will hold this question pending its analysis of the state claims as follows.

**Second Motion for Summary Judgment**

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257-58 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and–by its own affidavits or discovery–set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party does not produce evidence to show a genuine issue of

material fact, the moving party is entitled to summary judgment.  *See Celotex*, 477

U.S. at 323.  In ruling on a motion for summary judgment, inferences drawn from

the underlying facts are viewed in the light most favorable to the non-moving

party.  *See Matsushita*, 475 U.S. at 587.

**1.  History of Model Insurance Code in Montana.**

"The statutes at issue here are part of a statutory scheme enacted by the

Montana Legislature in 1959."  *Shupak v. New York Life Ins. Co.*, 780 F.Supp.

1328, 1337 (D. Mont. 1991).  As in *Shupak*, the statute at issue in the instant case,

33-18-206(2)[2], is part of Montana's Model Insurance Code, and, specifically, part

of the Unfair Trade Practices Act ("UTPA") codified as Chapter 18 of Title 33.

This Model Insurance Code was promulgated by the National Association of

Insurance Commissioners, *id.* (citing *Montana's Comprehensive New Insurance

Law*, 22 Mont. Law Rev. 1, 9 (1960)), and has been adopted in 48 states.  *Shupak,*

780 F.Supp. at 1337 (citing *Moradi-Shalal v. Fireman's Fund Ins. Co.*, 758 P.2d

58, 63 (1988)).  The "vast majority" of these states "have declined to imply a

private remedy for its violation."  *Id.* (citing *Moradi-Shalal*, 758 P.2d at 63-64)).

---

[2]  "No person shall make or permit any unfair discrimination between
individuals of the same class and of essentially the same hazard in the amount of
the premium, policy fees, or rates charged for any policy or contract of disability
insurance or in the benefits payable thereunder or in any of the terms or conditions
of such contract or in any other manner whatever."  § 33-18-206(2), MCA.

According to *Shupak*, "the National Association of Insurance Commissioners has reiterated that '[t]he 1971 Model Act does not contain an individual right of action provision'." *Id.* (citing *Moradi-Shalal,* 758 P.2d at 65 (citing 2 N.A.I.C. Proceedings (1980) 345-46)). Therefore, the *Shupak* court held that the two UTPA statutes (33-18-204, -212) at issue in that case did not provide an independent private right of action to a plaintiff. *Shupak*, 780 F.Supp. at 1338 ("neither the Montana Legislature nor the courts has expressly granted a private right of action under the provisions of Chapter 18, Title 33 [the Montana UTPA]."). More recently, an identical conclusion was reached by a state district court, in the case of *Victory Insurance Co. v. Montana State Fund*, Cause No. BDV-2011-284 (Mont. First Judicial Dist. 2011). (Doc. 54-1.) In *Victory Insurance*, the state district court found that the Montana legislature did not create a private cause of action under the UTPA for either insurance companies or individual insureds, except as narrowly prescribed by § 33-18-242, MCA. (Doc. 54-1 at 5-6, *Victory Insurance*, Cause No. BDV -2011-284.)

Generally, Montana's Insurance Code is enforceable *only* by the Montana Insurance Commissioner, who supervises the insurance department, which is a criminal justice agency. §§ 33-1-301, 311(6), MCA. The Insurance Commissioner creates rules for the administration of the Insurance Code. § 33-1-

313, MCA.  The Insurance Commissioner is empowered to investigate violations,

§ 33-1-311, MCA, subpoena witnesses, compel production of records, and

administer oaths or affirmations.  § 33-1-315, MCA.  The Insurance Commissioner

may conduct hearings in accordance with the Montana Administrative Procedures

Act.  § 33-1-701, MCA.  After discovery of a violation by the insurance

department, a two-year statute of limitations applies to an action by the insurance

department for violation of the Insurance Code.  § 33-1-707(1), MCA.  Regardless

of date of discovery, the insurance department may not commence an action unless

it is brought within 5 years of the date of the violation.  § 33-1-707(2), MCA.

After holding a hearing, the Commissioner may impose a fine not to exceed

$25,000 (in addition to "all other penalties imposed by the laws of the state") upon

a person found to have violated Montana's Insurance Code or a regulation

promulgated by the Commissioner.  § 33-1-317, MCA.  Such penalty imposed by

the Commissioner is appealable.

A person may appeal a Commissioner's order to the state district court in

Lewis and Clark County (the county in which the Commissioner's office is

located).  § 33-1-711(1), MCA.  The Commissioner may issue temporary and

permanent cease and desist orders and may bring an action in court to enforce

compliance with the Insurance Code and to obtain an injunction, restraining order,

or appointment of a receiver or conservator for the defendant or the defendant's assets. § 33-1-318, MCA.

There is also a specific Commissioner's enforcement subsection codified within the Unfair Trade Practices Act ("UTPA"). Specifically as to the UTPA, the Insurance Commissioner is authorized to receive complaints, § 33-18-1001, MCA, and to examine and investigate any person engaged in the business of insurance in Montana "in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by [the UTPA]. § 33-18-1002, MCA.

Importantly, if the Insurance Commissioner believes that a person engaged in the insurance business is engaging in an unfair method of competition or a practice that is unfair or deceptive, but that act or practice is not defined by the UTPA, the Commissioner is nevertheless empowered to proceed against the putative violator, if it would be in the public interest, by charging the person, holding a hearing, and making a written report of the Commissioner's findings of fact. § 33-18-1003, MCA. If the act or practice continues, the Commissioner may then, through the state attorney general, institute an action in court to obtain an injunction or restraining order. § 33-18-1003(2), MCA. In the alternative, the Commissioner, after hearing, may issue a cease and desist order that will become

final after the time allowed for filing an appeal in the state district court elapses or after any appeal is finalized. § 33-18-1004, MCA. Penalties may accrue during the appeals period. § 33-18-1004(4), MCA. Violation of cease and desist orders subjects a person to a civil penalty not to exceed $1,000 per day. § 33-18-1005, MCA.

Obviously, the UTPA is generally and specifically enforceable by the Montana Commissioner of Insurance. There is one well-demarcated statutory exception, however. In 1987, the Montana Legislature carved out a short list of six UTPA claims-handling complaints that may be brought by plaintiffs as independent causes of action for actual damages in state district court. § 33-18-242(1), MCA. The specific claims that are allowed by subsection -242 are itemized at 33-18-201(1), (4), (5), (6), (9), and (13).[3] Significantly, none of these

---

[3] "33-18-201. Unfair claim settlement practices prohibited. A person may not, with such frequency as to indicate a general business practice, do any of the following:

(1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue; . . .

(4) refuse to pay claims without conducting a reasonable investigation based upon all available information;

(5) fail to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; . . .

(9) attempt to settle claims on the basis of an application that was altered without notice to or knowledge or consent of the insured; . . .

claims handling and settlement practices are pertinent in this case, and they have

not been pled by Plaintiffs.

**2. Plaintiffs' State Claims, As Pled in the Amended Complaint.**

Even a cursory review of Plaintiff's state claims reveals that they are not on

the UTPA's short list of permissible independent causes of action. Instead,

Plaintiff's UPTA statutory claim (Count 3) pled in the Amended Complaint rests

upon § 33-18-206(2), MCA, which provides that

> No person shall make or permit any unfair discrimination between
> individuals of the same class and of essentially the same hazard in the
> amount of premium, policy fees, or rates charged for any policy or
> contract of disability insurance or in the benefits payable thereunder
> or in any of the terms or conditions of such contract or in any other
> manner whatever.

§ 33-18-206(2), MCA. Originally, the basis of the Count 3 statutory claim were

the Count 2 allegations that Plaintiffs complained that Defendant unfairly

discriminated against them in violation of an Insurance Code provision outside of

the UTPA, § 33-22-526(2), MCA, which statute provides that

> A group health plan and a health insurance issuer offering health
> insurance coverage in connection with a group health plan may not
> require an individual, as a condition of enrollment or continued

---

(13) fail to promptly settle claims, if liability has become reasonably clear,
under one portion of the insurance policy coverage in order to influence
settlements under other portions of the insurance policy coverage; . . . ."
§ 33-22-201, MCA.

enrollment under the group health plan, to pay a premium or contribution that is greater than the premium or contribution for a similarly situated individual enrolled in the group health plan on the basis of any health status-related factor of the individual or of an individual enrolled under the plan as a dependent of the individual.

Thus, in pleading Count 3 of the Amended Complaint, Plaintiffs' original theory was that because Defendant raised the premium on their group health policy on the basis of the health status of one individual in their group, they had been discriminated against in violation of § 33-22-526(2). Plaintiffs originally asserted that, for the purposes of this statute, the group they belonged to was the association of 600 employers, and Plaintiffs' employer health plan was an "individual" for purposes of this statute. Plaintiffs concluded that all employer groups in the association should pay exactly the same premium and that no employer group, such as theirs, should be singled out to pay a higher premium based on the health status of one individual in that group.

This Court found that § 33-22-526(2), MCA, was preempted by an identical federal statute under ERISA, 29 U.S.C. § 1182(b)(1). The Ninth Circuit panel affirmed this Court's finding of preemption and upheld this Court's determination that under the federal law pertaining to section 1182(b)(1), the association of 600 employers was not a bona fide association but merely a purchasing consortium. That determination compelled the conclusion that the 'group' was not the 600

employers but was the Fossen Brothers Farms' employer group. Thus, because no single individual within Plaintiffs' employer group was singled out to pay higher premiums based on health status, this ERISA anti-discrimination statute, 29 U.S.C. 1182(b)(1), was not, and could not be, violated by Defendant.

Plaintiffs assert that there is a long line of Montana cases that provide them with an independent basis for their claims under state law. (Doc. 59 at 15-16.) First, Plaintiffs cite *State ex rel. Larson v. District Court*, 423 P.2d 598 (Mont. 1967) (violation of statute requiring that disability claims be paid 'immediately' supports exemplary damages), and *First Security Bank of Bozeman v. Goddard*, 593 P.2d 1040, 1047 (Mont. 1979) (violation of statute requiring that claims be paid "as soon as possible" gives rise to tort liability). In *Larson*, the disability insurer refused to make payments on a disability claim made by a plaintiff whose leg had been amputated after an industrial accident. The Montana Supreme Court held that this failure to pay was in violation of the Montana statute requiring immediate payment of disability claims and allowed exemplary damages in what would otherwise be a simple breach of contract case.

Similarly, in *Goddard*, the credit disability insurer refused to make payments on a claim made by an insured who had a heart attack on the day that the bank received his promissory note for his purchase of a new car, which was the

same day that the credit disability insurer accepted Goddard's application for credit disability insurance. The Montana Supreme Court held that this violation of the statute requiring payment as soon as possible on disability claims gave rise to a tort liability for breach of the implied duty of good faith and fair dealing and that, further, this tort liability also gave rise to punitive damages.

However, in both of these Montana cases, the insured's independent cause of action was breach of contract, and the pertinent issue in each case was whether or not the district court was correct in allowing the insured to recover punitive damages for an act that constituted both the breach of the contract *and* an unlawful act under Montana statutes (*i.e.*, a violation of the state statute requiring disability insurers to immediately pay disability claims). In neither case was there a separate, independent cause of action permitted under state law, but merely punitive damages made available for the breach of contract claim when it alleged an unlawful act as the breach. Notably, both *State ex rel Larson* and *Goddard* are claims handling cases.

In this case, we have the breach of contract claim, but no evidence of an unlawful act under Montana's insurance statutes, and certainly not under the only private right of action afforded by the UTPA, § 33-18-242, MCA.

Plaintiffs also point out to a common law cause of action available under

Montana's UTPA. In *Klaudt v. Flink*, 658 P.2d 1065 (Mont. 1983), the Montana

Supreme Court allowed a third-party claimant to file an independent action under

the UTPA, Mont. Code Ann. § 33-18-201(6), for an insurer's violation of the duty

to settle claims. *Id.* at 1067. After *Klaudt*, the 1987 Montana Legislature acted to

place limitations on such common law claims against insurance companies by

enacting Mont. Code Ann. § 33-18-242, MCA. In this new UTPA provision,

*Klaudt* was both codified and circumscribed. This statute does provide an

independent causes of action in claims handling cases, but *only* "for breach of the

insurance contract, for fraud, or pursuant to this section [33-18-242], *but not under*

*any other theory or cause of action*." § 33-18-242(3), MCA. The 1987 legislature

also added a proviso that "[e]xemplary damages may also be assessed in

accordance with 27-1-221." § 33-18-242(4), MCA. In this fashion, the 1987

legislature preserved the common law punitive damages awards permitted by *State*

*ex rel. Larson* and *Goddard* for an insurer's violation of the duty to settle claims.

Again, in 1993, the Montana Supreme Court expanded the common law arising

from subsection 242 of Montana's UTPA by allowing plaintiffs to bring claims-

handling suits against insurance claims adjusters in addition to insurers. *O'Fallon*

*v. Farmers Ins. Exchange*, 859 P.2d 1008 (Mont. 1993).

What is apparent from this review of the cases cited by Plaintiffs is that

common law state cause of action in Montana insurance cases are confined to

claims handling and settlement disputes and would not under any circumstances

extend to a rate discrimination dispute.  Back in 1983, when the Montana Supreme

Court was grappling with the issue of whether or not to permit a third-party

claimant to bring a failure-to-settle claim against an insurer, Justice Fred Weber

filed a dissent in *Klaudt* that asserted his view that section 201 of the Montana

UTPA could not be construed to allow third-party claims against insurers.  Due to

the legislation passed by the 1987 Legislature, that issue is long behind us, but

Justice Weber's review of the entire UTPA is instructive, because he makes clear

that prior to the 1987 Legislature, there was no statutory private right of action

under Montana's UTPA:

> Section 33-18-201, MCA, contains fourteen paragraphs which set
> forth unfair claims settlement practices.  Other sections in the chapter
> [Chapter 18 - Unfair Trade Practices] set forth prohibitions against
> misrepresentation, false advertising, twisting, publishing false
> financial statements, unfair discrimination as to rates, preferred rates
> as to fictitious groups, no rebates, illegal dealings in premiums,
> extension of credit to policy holders, defaming an insurer, boycott,
> coercion or intimidation, false applications, restrictions on
> solicitation, and a number of other activities.  See sections 33-18-202
> to 33-18-501, MCA.  This is a very comprehensive list of unfair trade
> practices in the business of insurance.  Nowhere in this extensive
> statutory framework of unfair trade practices is there a specific
> provision granting to either insureds or third party claimants the right
> to bring an action to enforce any of the provisions of this chapter.
> Sections 33-18-1001 to 1005, MCA, set forth enforcement provisions

which essentially grant to the insurance commissioner the power to examine the actions of insurance companies and to seek cease and desist orders. . . . The purpose of the chapter is to regulate trade practices. The prohibition is against an insurance company engaging in trade practices which are unfair or deceptive as described. Of particular significance is the prohibition against an insurance company neglecting to effectuate settlement of claims "with such frequency as to indicate a general business practice."

It is now well-settled that there is both a statutory private right of action for claims-handling disputes under section 242 of the UTPA and common law rights arising therefrom. However, there is no common law or statutory private right of action pertaining to other types of insurance disputes, such as claims of rate discrimination in violation of subsection 206 of the UTPA, as is alleged in this case. Thus, even assuming *arguendo* that Plaintiffs had evidence of rate discrimination by Defendant, they still would lack a cognizable basis for bringing such a claim.

### 3. No Independent State Cause of Action Provided by UPTA's Anti-Discrimination Statute.

The real problem with Plaintiffs' continuing reliance upon the UTPA's anti-discrimination statute, § 33-18-206, MCA, as pled in Count 3, is that there is no such statutory private right of action under the UTPA (but for the claims-handling statutory exceptions itemized in 33-18-242). Thus, not only has this Court found

that there has been no discrimination under § 33-22-526(2), MCA, that can be pled

as a violation of UTPA anti-discrimination statute § 33-18-206, MCA, the Court

now finds that there is no private right of action provided by § 33-18-206, MCA,

itself, either.  Not only that, but to the extent that Plaintiffs now belatedly attempt

to support this § 33-18-206(2) discrimination claim by means of an allegation of

violation of the SEHIAA, (§ 33-22-1809, MCA [4]), the Court finds that the

---

[4]  This provision of Montana's Small Employer Health Insurance
Availability Act ("SEHIAA"), § 33-22-1801, *et seq.*, restricts premium rate
increases for businesses and classes of businesses.  The Act is applicable to small
employers and bona fide associations having 50 or fewer employees.  § 33-22-
1803(20), MCA.  The AMI/MCCT purchasing consortium filed with the Montana
Insurance Department as a bona fide association having more than 50 employees,
and thus it has not been required to comply with the rating restrictions of the
SEHIAA.  Plaintiffs argue that AMI/MCCT cannot be a bona fide association for
SEHIAA purposes when it is not a bona fide association for ERISA purposes.

Indeed, this Court found that, for ERISA purposes, the AMI/MCCT
purchasing consortiums were *not* bona fide associations (or "multiple employer
welfare arrangements") under federal law because the employer members of the
purchasing consortium did not have control of the association.  *Fossen v. Blue
Cross Blue Shield of Mont., Inc.*, 744 F.Supp.2d 1096, 1101-02 (D. Mont. 2010)
(*citing Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1389 (9th Cir. 1995).  This finding
was affirmed on appeal when the Ninth Circuit panel determined that the ERISA
statute prohibiting premium disparity based on health status factors, 29 U.S.C.
§ 1182(b), was not violated by Defendant.  *Fossen*, 660 F.3d at 1110-1111.
However, the SEHIAA definition of bona fide association does not include an
organizational-control requirement and is therefore not similar to the federal
definition of a bona fide association for ERISA purposes.  § 33-22-1803(7), MCA.

SEHIAA likewise provides no private right of action.[5]  Indeed, both as to the

UTPA (with the statutory and common law exceptions as noted) and as to the

SEHIAA, it is the Commissioner of Insurance who has been tasked by the

Montana Legislature with the enforcement of these provisions of the Insurance

---

[5]      Plaintiffs, attempting to save the Amended Complaint which clearly pleads only a violation of Montana's "little HIPAA" statute,§ 33-22-526, MCA, now assert on remand that the detriment they have suffered derives in part from the inconsistent positions taken by Defendant as to its "bona fide association" status.  By this Plaintiff refers to the fact that the AMI/MCCT is not a "bona fide association" under 29 U.S.C. 1809 for purposes of federal ERISA law--which factual and legal determination is the law of the case, as summary judgment on that count has been affirmed by the Ninth Circuit--but nevertheless AMI/MCCT does fit within the definition of a bona fide association for purposes of  a wholly unrelated Montana Insurance Code statute, § 33-22-1809, MCA, which is a statute contained within Montana's Small Employer Health Insurance Availability Act ("SEHIAA"), 33-22-1801, *et seq.*

Plaintiffs now argue in their briefs that Defendant unfairly evades the premium pricing restrictions placed upon small employer carriers by the SEHIAA. In making this argument Plaintiffs simply overlooks any dissimilarity between the definition of "bona fide association" for federal law purposes under ERISA and Montana's definition of "bona fide association" for state law purposes under the SEHIAA, § 33-22-1803(7), MCA.  However, "statutes with different historical origins and which serve different purposes, even though both pertain to the same subject, have no interpretive relevance to each other."  *2B Sutherland Statutory Construction,* § 52:1 (7th ed.).  Apparently, because of the dissimilarity between the two definitions used in unrelated federal and state legislation, the AMI/MCCT purchasing consortium does not qualify as a "bona fide association" under ERISA while at the same it may qualify as a "bona fide association" under Montana's SEHIAA.  The most important point is that this Court need not address Plaintiffs' unpled allegation of violation of the SEHIAA because there is no independent cause of action for such a grievance under Montana statute.

Code, not Plaintiffs' counsel, and not the state courts, except on appeal from the Commissioner's decision.[6]

### 4. No Cognizable Breach of Contract Cause of Action.

Plaintiffs assert that their Count 4 breach of contract claim (which, as pled, is grounded in a violation of § 33-22-526(2)) should now be viewed as stating a claim for breach of contract by a violation of § 33-18-206(2) and § 33-22-1809, MCA. It ought to be noted that § 33-22-1809, MCA, is nowhere mentioned in Count 4. The lynchpin of Count 4 breach of contract claim is the allegation of a violation of Montana's "little HIPAA" statute, § 33-22-526(2), MCA.

Even utilizing an alleged violation of § 33-18-206(2), MCA, as the basis for this breach of contract claim, however, will not save Count 4. The UTPA's

---

[6] The Court has received an affidavit filed on behalf of Monica Lindeen, Montana's Commissioner of Securities and Insurance, Montana State Auditor, who has served in that position since 2008. (Doc. 59-1.) Prior to that date, Plaintiffs' counsel, Mr. Morrison, served as Montana's Insurance Commissioner and State Auditor. (*See* Doc. 59-1 at 7, 9.) Clearly, both Insurance Commissioner Lindeen and former Insurance Commissioner Morrison urge an expansive interpretation of Montana insurance law. However, the Montana legislature did not envision expansion or interpretation of Montana's Insurance Code except by duly adopted legislative enactments, administrative rules, or administrative enforcement actions reviewable by the courts. Neither Insurance Commissioner chose to utilize their multiple powers on Plaintiffs' behalf when they had the opportunity and several years within which to do so, and there is no authority under Montana law to create a new cause of action to do what the Commissioners would not.

general anti-discrimination statute, § 33-18-206(2), MCA, cannot forbid conduct that is expressly permitted by the more particular statute, § 33-22-526(2)(b), which provides that "[t]his subsection (2) does not: (1) restrict the amount that an employer may be charged for coverage under a group health plan. . . ." *See* § 33-1-301, MCA.[7]

Upon remand, Plaintiffs now assert that an alleged violation of the SEHIAA forms the basis for Count 4 by reference to the citation to § 33-18-206(2), the UTPA anti-discrimination statute, as follows:

> 44. BCBSM breached its contracts with the Plaintiffs by violating the terms of §§ 33-18-206(2), MCA and 33-22-526(2), MCA, which are incorporated in the contracts. BCBSM unfairly discriminated between the Plaintiffs and other individuals of the same class and of essentially the same hazard in the amount of premiums and rates charged for their policies of disability insurance. BCBSM required Plaintiffs to pay premiums greater than the premiums for similarly situated individuals enrolled in the group health plan, on the basis of health status-related factors of the individual Plaintiffs or of their individual dependents enrolled under the plan.
>
> 45. BCBSM breached its contracts with the Plaintiffs by violating the implied covenant of good faith and fair dealing in its actions described above.
>
> 46. As a result of BCBSM's breaches of contract, Plaintiffs have suffered damages.

---

[7] "Particular provisions prevail. Provisions of this code relative to a particular kind of insurance or a particular type of insurer *or to a particular matter* shall prevail over provisions relating to insurance in general or insurers in general or to such matter in general." § 33-1-103, MCA (emphasis added).

(Amended Complaint, Doc. 85 at 7-8.)  Plaintiffs' newest theory is that a violation of the SEHIAA is a type of discrimination encompassed by the UTPA's anti-discrimination statute.  It bears repeating, however, that the Count 4 breach of contract claim is based upon an alleged violation of Montana's little HIPAA statute (§ 33-22-526(2)), which statute is preempted by the ERISA big HIPAA statute (29 U.S.C. § 1182(b)(1)), which federal statute this Court found was not violated, which ruling was affirmed on appeal.  *Fossen*, 660 F.3d at 1110-1111.

Even if the Court were to overlook Plaintiffs' failure to plead properly an alleged violation of the SEHIAA, the problems encountered by Plaintiffs as to Count 3 would still continue to beset Plaintiffs in Count 4.  There is no private right of action to bring a claim of violation of UTPA's anti-discrimination statute. There is also no private right of action to bring a claim of violation of the SEHIAA § 33-22-1809, MCA.  Plaintiffs' breach of contract claim is merely another back-door method of presenting an alleged violation of a statute that they have no right to enforce.  *See  Schlessinger v. Valspar Corp.*, 817 F.Supp.2d 100, 108 (E.D. N.Y. 2011) ("Plaintiffs have alleged all of the elements required of a breach of contract claim. . . .  [h]owever, . . . plaintiffs' common law claim relies *entirely* on incorporating the requirements of a statute with no private right of action. . . . Plaintiffs' claim therefore is precisely the form of 'artful pleading' discussed

above that state courts have identified as making an impermissible end run around statutes with no private right of action.") (internal citations omitted); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (3d Cir. 2003) ("Since in this case, . . . no private right of action exists under the relevant statute, the plaintiffs efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the [statute]."). *See also Moradi-Shalal v. Fireman's Fund. Ins. Cos.*, 758 P.2d 58 (Cal. 1988) ("Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)").

The Montana Legislature explicitly reserved enforcement of the SEHIAA to the Insurance Commissioner pursuant to the Montana Administrative Procedures Act. § 33-22-1822, MCA.[8] Any final decision of the Insurance Commissioner is to be appealed to state district court. § 33-1-711, MCA.[9] The statute of limitations for an enforcement action by the Insurance Department is two years from discovery of the violation, two years after the violation ought to have been

---

[8] "The commissioner shall adopt rules in accordance with the Montana Administrative Procedure Act to implement and administer this part." § 33-22-1822, MCA.

[9] "Except as provided in subsection (2), an appeal of the commissioner's order must be filed with the district court in Lewis and Clark County pursuant to the procedures provided for in Title 2, chapter 4, part 7." § 33-1-711(1), MCA.

discovered through the use of reasonable diligence, and up to a maximum of five years from the date of the violation. § 33-1-707, MCA. In this case, Dale Fossen's complaint to Montana's Department of Insurance was dated April 6, 2006. (*See* Doc. 24-1 at 1.) The Insurance Department took no action against Defendant.

Plaintiffs now claim that Montana common law permits them to bring a breach of contract claim on the basis of *any* alleged violation of the Montana insurance code, even including statutes for which no private right of action has been granted by the Montana legislature. This theory is not supported by the cases cited by Plaintiffs. In each of those cases, from *State ex rel. Larson* and *First Security Bank of Bozeman v. Goddard*, to *Klaudt v. Flink* and *O'Fallon v. Farmers Ins. Exchange*, which are all claims handling and claims settlement cases, the Montana Unfair Trade Practices Act explicitly provides a private right of action for violation of the claims handling/settlement statute.[10] Furthermore, after the Montana Supreme Court extended the private right of action to third-party

---

[10] Plaintiffs' attempt to utilize the cases of *Thomas v. Northwestern National Ins. Co.*, 973 P.2d 804 (Mont. 1998) (common law tort claim involving insurer's failure to notify insured of policy renewal change), and *Williams v. Union Fidelity Life Ins. Co.*, 123 P.3d 213 (Mont. 2005) (claim of breach of implied covenant of good faith and fair dealing alleging postclaim underwriting) is unavailing because Plaintiffs do not allege a common law tort claim. Plaintiffs allege a statutory violation of the UTPA.

claimants, the 1987 Montana Legislature explicitly codified *that* extension of

Montana law, but expressed its intention that the extension go no further:

> An insured who has suffered damages as a result of the handling of an
> insurance claim may bring an action against the insurer for breach of
> the insurance contract, for fraud, or pursuant to this section [*i.e.,*
> permitting claims rising under "subsection (1), (4), (5), (6), (9), or
> (13) of 33-18-201"], *but not under any other theory or cause of
> action*.  An insured may not bring an action for bad faith in
> connection with the handling of an insurance claim.

Mont. Code Ann. § 33-18-242(3) (emphasis added).  To permit Plaintiffs to utilize

the claims handling/settlement private right of action cases to allow them to charge

*any* violation of *any* provision of Montana's Insurance Code would intrude upon

the Insurance Commissioner's duty of enforcing the Insurance Code and violate

the Montana Legislature's explicit intent to provide in the UTPA a private right of

action only for claims handling/settlement actions, fraud, or breach of contract.

The other possible basis for the breach of contract claim in Count 4 is the

alleged violation of the implied covenant of good faith and fair dealing, but

ERISA preempts such a claim.  *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921

F.2d 889, 897 (9th Cir. 1990); *Jabour v. Cigna Healthcare of Cal.*, 162 F.Supp.2d

1119, 1125 (C.D. Cal. 2001).

Thus, for all these reasons, Count 4 fails as a matter of law, and Defendant

is entitled to summary judgment on Count 4.  Without any substantive surviving

claims, Plaintiffs' claims for class action (Count 5) and common fund (Count 6) must also fail.

**5. Plaintiffs' Have No Actual Damages; Plaintiffs' Requested Restitution is Not Available Under ERISA.**

As noted in the prior opinion, Fossens have no actual damages because when they filed a complaint with the Insurance Commissioner objecting to Defendant's notice of impending increase in their premiums for the plan year 2006, Defendant responded by agreeing not to raise the premium for that plan year as a gesture of good will. Defendant explained that it would refrain from raising the premium only because Fossens seemed to have a misunderstanding about the plan. Defendant made clear in 2006 that if Fossens chose to renew their policy for the next plan year, the premium increase would then be imposed. Even though Fossens continued to believe that Defendant had no right to increase their premium, they nevertheless continued to renew their health insurance policy in every ensuing year. Thus, in fact, Fossens suffered no actual damages for the 2006 policy year, when they arguably may have had a genuine misunderstanding regarding Defendant's method of rating and setting premiums. In the years that follow, however, when Fossens could have had no such misunderstanding, they still chose to renew their annual health insurance policies and pay the higher

premium. On these facts, Plaintiffs cannot show that they have suffered damages.

In addition, there is a question whether Plaintiffs' request for restitution is proper. Plaintiffs' request restitution from Defendant by the return of their premiums paid from 2006 onward. Because this is a group health plan covered by ERISA, however, and ERISA permits relief only in the form of injunctions or "other appropriate equitable relief...." 29 U.S.C. § 1132(a)(3)(B), the Court must consider whether the requested relief is available. Clearly, 'appropriate equitable relief' excludes compensatory and punitive damages. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 124 L.Ed.2d 161 (1993). Appropriate equitable relief does include equitable restitution, but "not all relief falling under the rubric of restitution is available in equity." *Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) ('appropriate equitable relief' does not encompass request to compel plan beneficiary to make restitution to plan of payments received from third-party tortfeasor). "'[R]estitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 714 (quoting *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994)).

A plaintiff can "seek restitution *in equity*, ordinarily in the form of a

constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (citations omitted). However, such an equitable lien applies "only to '*particular* funds or property *in the defendant's possession.*'" *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092 (9th Cir. 2012) (emphasis in original) (quoting *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S.Ct. 1866, 1879, 179 L.Ed.2d 843 (2011)). Thus, the funds sought to be recovered in equity must be the specifically identified funds at issue and not payable from the general assets of the defendant. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364 (2006).

In their Prayer for Relief, Plaintiffs request that the Court "order that Defendant return to its insureds the excess premiums it has charged in excess of those allowed by § 33-22-526(2), MCA." (Doc. 85, Amended Complaint at 11.) It is settled that Defendant did not violate § 33-22-526(2), MCA, but that is beside the point here, which is that Defendant no longer has Plaintiffs' premium payments in its 'possession and control,' and that Plaintiffs are seeking to 'impose personal liability' on Defendant rather than "enforcement of an equitable lien on particular property." *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1094 (9th Cir. 2012) (citing *Sereboff*, *Knudson*, and *Cigna v. Amara*,

27

131 S.Ct. 1866, 179 L.Ed.2d 843 (2011)). "This is quintessentially legal, rather than equitable, relief." *Id.* at 1094. In this case, there is really no doubt that the premiums have not been segregated in a separate fund, or that they have been dissipated, and that Plaintiffs seek 'restitution' of their premiums by means of a payment made from the general funds of Defendants' assets.

Thus, the Court concludes that not only have Plaintiffs failed to provide evidence of a violation of Montana insurance law, and not only have Plaintiffs failed to identify a private right of action upon which they might rest their state claims, but also Plaintiffs fail to show that they are entitled to restitution of their premium payments that are not segregated or otherwise in the possession of Defendant.

**Conclusion**

Under federal ERISA law, the big HIPAA statute, 29 U.S.C. § 1182(b)(1), does not prohibit an insurer's practice of rating employers that have joined together in a purchasing consortium at the employer-group level (as opposed to rating the group at the purchasing-consortium level). Because the federal statute preempts an identical Montana statute, § 33-22-526(2), MCA, this method of rating purchasing consortiums does not violate Montana's "little HIPAA" statute.

Because this specific statute permits the conduct at issue here, a more generalized insurance statute such as the Montana UTPA's anti-discrimination provision, § 33-18-206(2), MCA, cannot be used to challenge the insurer conduct at issue in this case. § 33-1-103, MCA. The Montana Unfair Trade Practices Act provides an independent private right of action for claims handling and settlement disputes. § 33-18-242(3), MCA. Montana's UTPA does not provide for any other independent private right of action. Specifically, in this case, the UTPA's general anti-discrimination statute, § 33-18-206(2), MCA, does not provide a private right of action for discrimination in insurance rating practices, and for all these reasons Count 3 must fail. As to Count 4, a breach of contract claim cannot be maintained when it requires adjudication of matters for which there is no private right of action (*i.e.,* a violation of § 33-18-206(2), MCA). Additionally, Count 4 nowhere states a claim under the Small Employer Health Insurance Availability Act. Even if it did, the SEHIAA does not contain a statute providing a private right of action that would allow an insured to litigate directly a challenge to insurer's rating practices pursuant to § 33-22-1809, MCA. In both instances (the UTPA anti-discrimination statute and the SEHIAA statute), the Montana legislature has structured the Insurance Code to place the primary duty of enforcement in the office of the Insurance Commissioner and the Insurance Department. As to

Plaintiffs' final claims, Count 5 (Class Claims) and Count 6 (Common Fund), it is clear that the request for class certification is moot. *See Wright v. Schock*, 742 F.2d 541, 545-46 (9th Cir. 1984). Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' Second Motion for Remand (Doc. 48) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion in the Alternative to Certify Questions (Doc. 79) is DENIED.

IT IS FURTHER ORDERED Plaintiff's Motion to File a Response to Notice of Supplemental Authority (Doc. 74) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Second Motion for Summary Judgment (Doc. 53) is GRANTED. The Amended Complaint is DISMISSED and all relief is denied to Plaintiffs. Let judgment enter.

Dated this 24th day of January, 2014.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE